**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CARL HARRISON,**

**Plaintiff,**

**v.** **CASE NO. 09-3050-SAC**

**SHELTON RICHARDSON,**
**et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

This civil rights complaint was filed pursuant to 42 U.S.C. § 1983, by an inmate of the Leavenworth Detention Center, Leavenworth, Kansas (LDC). Named as defendants are Shelton Richardson, Warden, LDC; Robert Mundt, Assistant Warden, LDC; Bruce Roberts, Chief of Security, LDC; and Ken Daugherty, Chief of Unit Management, LDC. Plaintiff claims that defendants were acting under color of state law, and sues each in his individual capacity.

**FACTUAL BACKGROUND**

Mr. Harrison was convicted in the State of Maryland and has been incarcerated since June 13, 2001, on "a life all suspended but 60 year sentence." On July 23, 2008, he and 47 other prisoners from the Maryland Department of Corrections (MDOC) were transferred to the LDC pursuant to a contract between federal agencies and the MDOC.

**LEGAL CLAIMS**

Plaintiff complains of conditions of confinement and

actions of employees at the LDC. As Count 1 of his complaint, he asserts he was subjected to cruel and unusual punishment and excessive force in violation of his rights under the Eighth Amendment. In support, he describes conditions in segregation that he alleges were unnecessary and imposed, not in a good faith effort to maintain prison discipline, but maliciously to cause harm.

As Count 2, plaintiff claims his Fourteenth Amendment due process rights were violated as a result of procedures "enforced to illegally confine (him) to segregation." In support, he alleges he was "arbitrarily placed in segregation" without proper notice, and thus had no opportunity to answer any allegations against him.

As Count 3, plaintiff claims his rights under the Fifth, Sixth, and Fourteenth Amendments have been violated because the LDC's law library is "totally inadequate to assist petitioner in preparations for his post conviction relief petition." As factual support, he alleges he could not use the law library on July 30, 2008, upon his arrival at LDC due to "orientation phases," and when he did use it on August 24, 2008, he discovered inadequate legal research materials and that the "legal clerk" was not knowledgeable as to Maryland law.

**REQUESTED RELIEF**

Plaintiff seeks compensatory, punitive, and nominal damages against each defendant.

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed an Application to Proceed Without Prepayment of Fees (Doc. 2), and has attached an Inmate Account

Statement in support as statutorily mandated. Section 1915(b)(1) of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account is $36.69 and the average monthly balance is $31.71. The court therefore assesses an initial partial filing fee of $7.00, twenty percent of the average monthly deposit, rounded to the lower half dollar[1]. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court. His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

**SCREENING**

Because Mr. Harrison is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

---

[1] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff remains obligated to pay the full $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

**FAILURE TO STATE A CAUSE OF ACTION UNDER § 1983**

At the outset, the court finds from the face of the complaint that plaintiff generally fails to present a cause of action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988)(citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). Although plaintiff makes the conclusory allegation that each defendant acted under color of state law, his complaint is against employees of the LDC. The Leavenworth Detention Center is not a state agency and its employees are not state employees or actors. They therefore do not act "under color of state law[2]." Instead, the Corrections Corporation of America (CCA) that owns and operates the LDC is a private corporation that often contracts with an agency of the United States, usually the United States Marshals Service or the Federal Bureau of Prisons, to house federal prisoners. It follows that plaintiff does not state a cause of action under § 1983

---

[2] The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action." West, 487 U.S. at 42; Polk County v. Dodson, 454 U.S. 312 (1981). A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49; Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Yanaki v. Iomed, Inc., 415 F.3d 1204, 1208 (10th Cir. 2005), cert. denied, 547 U.S. 1111 (2006).

against defendant CCA/LDC employees[3]. See Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982)(decisions of physicians of privately owned and operated nursing home to transfer Medicaid patients not state action); cf., West v. Atkins, 487 U.S. 42, 55-56 (1988)(A private physician who contracted with a state prison to treat inmates to satisfy the state's constitutional obligation to provide medical care, was held to be a state actor based upon his functions within the state system.). Plaintiff's remedy, if any, is an action for negligence or other misconduct in state court, if available. See Lindsey v. Bowlin, --- F.Supp.2d ----, 2008 WL 2331175 (D.Kan. June 6, 2008)(Kansas law generally provides an inmate with a remedy against CCA employees for negligence and for actions amounting to violations of federal constitutional rights.); see Peoples v. CCA Detention Centers, 422 F.3d 1090, 1104-05 (10th Cir. 2005)(Individual CCA defendants owed a duty to protect to plaintiff that if breached, would impose negligence liability.); see also Menteer v. Applebee, 2008 WL 2649504, *8-*9 (D.Kan. June 27, 2008)(slip copy)(plaintiff's state law negligence claim found to be equally effective, alternative cause of action to Bivens claim). Thus, plaintiff has not presented a valid jurisdictional basis for a cause of action in federal court. Plaintiff will be given time to show cause why this action should not be dismissed for failure to state a claim under 42 U.S.C. § 1983.

---

[3] Nor does plaintiff have an established cause of action against CCA/LDC employees under 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97 (1971). Bivens held that "plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. §1983." Id.; Carlson v. Green, 446 U.S. 14, 18 (1980)(recognizing a parallel cause of action for Eighth Amendment violations). However, the proper defendant in a Bivens action is a federal official or agent, not an employee of a private corporation.

The court notes that even if plaintiff could allege a cause of action under § 1983, his complaints regarding actions or inactions by LDC employees are either conclusory or the facts alleged fail to state a federal constitutional claim. A pro se complaint must be given a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520 (1972); See Jackson v. Integra Inc., 952 F.2d 1260, 1261 (10th Cir. 1991). However, the court cannot assume the role of advocate for the pro se litigant, and "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997); see Kempf v. City of Colorado Springs, 91 Fed. Appx 106, 107 (10th Cir. 2004). A broad reading of the complaint does not relieve the plaintiff of the burden of alleging sufficient facts to state a claim on which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.); see Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." Id. The court comments upon each of plaintiff's claims and their deficiencies.

**COMPLAINTS REGARDING PLACEMENT IN SEGREGATION**

Plaintiff complains that he was placed in segregated confinement and a "phase level program" upon his arrival at the

LDC, despite his having been a "general population prisoner in Maryland." He alleges he was required to complete level I to enter general population, but also that he complied and was released into general population on July 30, 2008, along with several other Maryland inmates. On August 6, 2008, he was again placed in segregation, but does not disclose the circumstances or duration[4]. Plaintiff also alleges that October 22, 2008, he was "immediately placed back in segregation after "two correctional staff were assaulted," even though "the facility's administration" knew he had no knowledge of or involvement in the incident. He further alleges that on October 25, 2008, "all Maryland prisoners" were placed in segregation due to the assault incident. He complains that no disciplinary report was issued, and he was not made aware of the reason for his placement in segregation until October 28, 2008, when all Maryland segregation inmates were issued a "status change sheet" showing placement "on pending hearing detention." He asserts that he was segregated simply for being a Maryland prisoner. He appears to allege that a grievance resulted in "a subsequent status change" on December 1, 2008, "to security detention."

Plaintiff'S complaints about his temporary placements in segregation or administrative detention fail to state a federal constitutional claim. Administrative detention implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." McDiffett v. Stotts, 902

---

[4] Elsewhere plaintiff alleged he was released back into general population on August 21, 2008.

F.Supp. 1419, 1426 (D.Kan. 1995)(quoting Sandin v. Conner, 515 U.S. 472, 486 (1995)); Speed v. Stotts, 941 F.Supp. 1051, 1055 (D.Kan. 1996)(citing Sandin, 515 U.S. at 486). Plaintiff has not described conditions or restrictions so atypical in type or duration as to amount to a federal constitutional violation. In any event, an inmate's placement in segregated confinement for brief intervals at various times involves classification decisions purely within the discretion of prison officials, which are not reviewable in federal court. See Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994). Furthermore, plaintiff has no constitutional right to written notice and a hearing prior to every security classification change.

**COMPLAINTS REGARDING CONDITIONS IN SEGREGATION**

Plaintiff alleges that on October 22, 2008, he was stripped to his boxers, and forced to walk through the facility and inclement weather to the segregation building, where he was placed in a strip cell for "approximately 3 days" with "no clothes, linen or hygiene supplies." Plaintiff also complains that while in segregation he was forced to sleep on a "metal bunk" without a mattress[5], clothing, or bed linens, in frigid temperatures, and that it caused severe pain in his right leg from surgery performed on September 12, 2008. He claims the pain caused "physical injury internally."

Mr. Harrison complains of other conditions in the segregation unit including "decreased vocational and therapeutic opportunities;" no operable heating unit; "disregard" for his

[5] Plaintiff's exhibit of his grievance on this matter indicates he was given a mattress and a pillow after nine hours in the strip cell.

medical conditions, including high blood pressure and chronic asthma, until October 27, 2008, when he was "finally seen by a facility nurse;" and that his property, including his asthma pump, was placed on "investigatorial hold" in defendant Roberts' office. He claims the status or placement caused harm to his overall progress review concerning parole issues; prevented him from adequately pursuing rehabilitation through substance abuse programs; prevented him from earning good conduct credit and "industrial credit days" to decrease his time in prison[6]; and prevented him from earning money in a prison job.

Plaintiff specifically complains that he has made several requests "to be placed on any educational, vocational and or job assignment list" but was informed that due to his sentence, the security level of the facility, and a lengthy waiting list he would be "limited to a basic sanitation job assignment whenever a position became available." He also alleges he filed many grievances regarding his medical care, and was told by "counsler (sic) Ms. T. Tinsley" that he would not be assigned a job because "medical denied to clear him as a result of the grievances that he filed regarding his surgery issue."

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment only when two requirements are met. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, objectively, the deprivation alleged must be

---

[6] Plaintiff's allegations of harm to his parole status and sentence credit are not supported by any factual allegations whatsoever. In any event, challenges to parole decisions or denial of sentence credit which could result in earlier release, must be litigated in a habeas corpus petition, before a cause of action for money damages is stated under § 1983. See Heck v. Humphrey, 512 U.S. 477 (1994).

sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Id. Second, the official must have acted with a sufficiently culpable state of mind, namely deliberate indifference to inmate health or safety. Id. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. The Supreme Court has noted that conditions of confinement may be restrictive and even harsh, without constituting cruel and unusual punishment under the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Accepting as true plaintiff's allegations regarding his walk to and conditions in the segregation unit, the court finds they do not amount to deprivations so cruel or prolonged as to have posed a serious risk of danger to plaintiff's life or health. Furthermore, a prison inmate has no federal constitutional right to rehabilitation programs, employment, or wages while in prison. Mr. Harrison has failed to state facts showing a violation of the Eighth Amendment or any other federal constitutional provision.

**DENIAL OF ACCESS CLAIM**

Plaintiff claims he needs "case law and annotated code of Maryland and Maryland Rules" to "properly assemble" a post-conviction petition. He states he gave the facility's attorney a list of needed cases on three occasions, but received nothing despite filing grievances. He also alleges that on December 9, 2008, a memorandum "issued stating that Maryland law books would be

provided for Maryland inmates." He asserts, however, that law books alone are not enough to constitute adequate access to the courts for one "who lacks legal knowledge and understanding." Finally, he alleges he intended to file his post-conviction petition pro se, but due to the inadequate library has had to obtain assistance from the public defenders' office.

It is well-established that a prison inmate has a constitutional right of access to the courts. However, to assert a claim of denial of court access, an inmate must satisfy the standing requirement of "actual injury" by showing that the alleged denial of legal resources actually hindered his efforts to pursue a nonfrivolous claim. Lewis v. Casey, 518 U.S. 343, 348, 350-352 (1996)(The inmate must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," causing him "actual injury."); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). It is not enough to simply state that he was provided insufficient time in the prison law library or that the library is inadequate. Plaintiff alleges no facts showing actual injury. He may do so by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. Id. at 350, 353.

In addition, providing law library facilities to inmates is merely "one constitutionally acceptable method to assure meaningful access to the courts." Id. at 351 (citing Bounds v. Smith, 430 U.S. 817, 830 (1977)). It follows that the inmate represented by counsel, is not entitled to a law library. Plaintiff notes that he

has obtained assistance from a public defender attorney.

Moreover, rather than having been denied access, Mr. Harrison managed to file the instant lawsuit in federal court. His complaints regarding lack of immediate access to a law library, and initial difficulties obtaining Maryland legal materials also fail to include any allegations showing actual injury to his pursuit of a non-frivolous legal claim. It follows that plaintiff has failed to state a claim of denial of access to the courts.

**FAILURE TO ALLEGE PERSONAL PARTICIPATION**

Finally, the court notes that a defendant cannot be held liable in a civil rights action based solely on the theory of respondeat superior. Instead, an essential element of a civil rights action for money damages against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants").

Plaintiff's allegations that he was placed in segregation "under the authority of Bruce Roberts," and "to (his) belief of information," under the "directive" and instructions of defendant Assistant Warden Mundt, are conclusory, and barely sufficient to show direct personal involvement by either of these individuals in

any of the alleged unconstitutional acts or conditions. Plaintiff's allegations that he received no response from Mundt and Daugherty are clearly insufficient to show their personal involvement in acts that presumably preceded any grievance. Plaintiff alleges no participation by defendants Richardson or Daugherty in any complained-of events. Plaintiff's allegations that defendant Warden Richardson was, or should have been, apprised of circumstances but failed to react and address "the policy or custom correctly" and thereby allowed illegal acts are likewise conclusory. These statements, and plaintiff's claims that defendant Richardson is legally responsible for his subordinates' acts, and was "grossly negligent" in managing the persons he supervises, improperly assert liability of defendant Richardson based upon his supervisory capacity rather than his actual participation in any illegal acts.

**PLAINTIFF ORDERED TO SHOW CAUSE**

Plaintiff shall be given time to show cause why this action should not be dismissed for the reasons stated herein. If he does not respond to this Order within the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 7.00. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without

prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff must show cause why this action should not be dismissed for failure to state a cause of action under 42 U.S.C. § 1983 and for failure to allege sufficient facts in support of a federal constitutional claim as discussed herein.

**IT IS SO ORDERED.**

Dated this 19th day of March, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge